IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| KENNETH J. COOKE, | ) |
| Plaintiff, | ) Case No. 4:13-cv-00018 |
| v. | ) **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, | ) By: Hon. Jackson L. Kiser |
| Acting Commissioner of Social Security, | ) Senior United States District Judge |
| Defendant. | ) |

Before me is the Report and Recommendation ("R & R") of the United States Magistrate Judge recommending that I grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment/Motion to Remand, and affirm the final decision of the Commissioner. The R & R was filed on August 5, 2014, and Plaintiff Kenneth J. Cooke ("Plaintiff") filed a timely Objection on August 19, 2014. The Commissioner failed to respond in any fashion, and the matter is now ripe for review. See Fed. R. Civ. P. 72(b)(2). After careful review and consideration, and for the reasons stated below, I will overrule Plaintiff's Objection, adopt the R & R of the Honorable Joel C. Hoppe, grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment/Motion to Remand, and affirm the final decision of the Commissioner.

I. **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On October 18, 2010, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"). (R. at 179–82); see 42 U.S.C. §§ 401–434 (2014). On November 2, 2010, he filed an application for supplemental security income under Title XVI of the Act. (R. at 183–92); see 42 U.S.C. §§ 1381–1383f

(2014). In both applications, Plaintiff alleged that he had been disabled since September 1, 2009, due to a combination of bipolar disorder, depression, chronic pain, muscle spasms and stiffness, fatigue, shortness of breath, kidney problems, confusion and memory loss, heart problems, and high blood pressure. (R. at 179, 183, 216.) The state agency initially denied Plaintiff's applications on January 20, 2011, and again upon reconsideration on April 7, 2011. (R. at 69–70, 95–96.)

On January 3, 2012, Plaintiff appeared with counsel before Administrative Law Judge Brian B. Rippel ("the ALJ"). (R. at 17.) Vocational expert Ashley Wells ("the VE") also testified at the hearing. (R. at 17, 60–67.) In a written decision dated January 20, 2012, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (R. at 17–30.) He found that Plaintiff had the following severe impairments: respiratory disorder, essential hypertension, vertebrogenic disorder, obesity, anxiety disorder, affective disorder, bipolar disorder, depressive disorder, and substance abuse disorder. (R. at 19–21 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) Although Plaintiff alleged disability due to kidney problems, the ALJ noted that the record contains "no history of treatment or prescribed medications for a kidney disorder." (R. at 19.) He found that Plaintiff did not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21–23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).)

After consideration of the entire Record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to the following limitations: (1) he can only occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; (2) he can never climb

ladders, ropes, or scaffolds; (3) he can no more than frequently balance; (4) he must avoid concentrated exposure to heat, wetness, humidity, vibrations, irritants, and workplace hazards; and (5) his work is limited to simple routine and repetitive tasks with only occasional interaction with supervisors.  (R. at 23–27.)  The ALJ determined that Plaintiff was capable of performing past relevant work as an assembler or, in the alternative, other jobs that exist in significant numbers in the national economy.[1]  (R. at 27–29.)  Accordingly, he concluded that Plaintiff was not disabled within the meaning of the Act.  (R. at 29.)  The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner on March 27, 2013.  (R. at 1–4.)

On May 22, 2013, Plaintiff filed suit in this Court to challenge the final decision of the Commissioner.  (Compl. [ECF No. 1].)  Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the case to the United States Magistrate Judge for consideration.[2]  Plaintiff and the Commissioner filed cross-motions for summary judgment.  (Pl.'s Mot. Summ. J., Oct. 23, 2013 [ECF No. 10]; Def.'s Mot. Summ. J., Jan. 7, 2014 [ECF No. 16].)  On August 5, 2014, Judge Hoppe filed his Report and Recommendation, recommending that I affirm the final decision of the Commissioner.  (R & R, Aug. 5, 2014 [ECF No. 19].)  On August 19, 2014, Plaintiff filed a timely Objection to the R & R.  (Pl.'s Obj., Aug. 19, 2014 [ECF No. 20].)  The Commissioner did not respond, so the matter is now ripe for review.

---

[1] For example, the VE testified, based on the ALJ's hypothetical, that an individual with Plaintiff's limitations would be able to perform the requirements of light and sedentary unskilled work, which includes jobs such as laundry folder, night cleaner, mail clerk, addressing clerk, charge account clerk, and surveillance monitor.  (R. at 62–67.)

[2] The case was initially referred to the Honorable Robert S. Ballou on October 15, 2013 [ECF No. 9], and then later referred to the Honorable Joel C. Hoppe on February 24, 2014 [ECF No. 18].

## II.     STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. See 42 U.S.C. § 405(g) (2014); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545 (2014); see Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927 (2014). Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. See id. §§ 404.1527(e), 416.927(e); Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. Laws, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[3]" <u>Mastro</u>, 270 F.3d at 176 (quoting <u>Craig</u>, 76 F.3d at 589).

## III. DISCUSSION

Plaintiff has filed a two-part Objection to Judge Hoppe's R & R arguing that Judge Hoppe erred by affirming the ALJ's decision not to afford the opinion of Dr. Trost, Plaintiff's treating physician, controlling weight. (<u>See</u> Pl.'s Obj. pg. 2–6; R & R pg. 13–19.) Plaintiff also objects to Judge Hoppe's conclusion that the ALJ used the proper legal standard when he concluded that Plaintiff was not entirely credible on the issue of his impairments. (<u>See</u> Pl.'s Obj. pg. 6–10; R & R pg. 19–22.) Both arguments are addressed in turn, and the Record on these issues is reviewed *de novo*.

### A. *The Opinion of Plaintiff's Treating Physician*

Under the treating physician rule, "[c]ourts typically 'afford greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" <u>Hines v. Barnhart</u>, 453 F.3d 559, 563 (4th Cir. 2006) (quoting <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 (4th Cir. 2005)). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2014). But the treating physician rule "is not absolute." <u>Hines</u>, 453 F.3d at 563 n.2. An "ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." <u>Hunter v.</u>

---

[3] Or the secretary's designate, the ALJ. <u>See</u> <u>Craig</u>, 76 F.3d at 589 (quoting <u>Walker</u>, 834 F.2d at 640).

- 5 -

Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). When the ALJ determines that contrary evidence justifies abandoning the treating physician rule, he must specify how much weight he gives the physician's opinions, and he must offer "good reasons" for that decision. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2014).

In the present case, the ALJ determined that the opinions of Plaintiff's treating psychiatrist, Dr. William Trost, were entitled to little weight "as the degree of limitations described [in Dr. Trost's opinions] are inconsistent with his own treatment notes and other mental health providers of record." (R. at 27.) I agree with Plaintiff that a Global Assessment of Functioning ("GAF") score, standing alone, is not sufficient to make a finding in regards to the severity of a claimant's mental disability or limitation.[4] See Stultz v. Astrue, Case No. 4:09-cv-14, 2010 WL 58350, at *3 (W.D. Va. Jan. 5, 2010) (Mag. Judge's Report), adopted by 2010 WL 342550 (W.D. Va. Jan. 25, 2010). I disagree, however, that the ALJ did not adequately explain his reasoning for abandoning the treating physician rule, and that that explanation was not supported by the Record. The ALJ's conclusion that Dr. Trost's opinion conflicts with other evidence in the Record is properly supported.

It is certainly true that GAF scores represent merely a "snapshot of functioning at any given moment." Powell v. Astrue, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013). In the present case, however, Plaintiff's GAF scores[5] revealed a level of functioning that was consistent with

---

[4] This is not to say that the ALJ's reliance on the GAF scores was improper. The ALJ properly considered the relevant GAFs, in conjunction with Plaintiff's entire medical record, when determining whether Plaintiff was limited to the degree he and Dr. Trost contended.

[5] GAF scores represent a "clinician's judgment of the individual's overall level of functioning." Am. Psychological Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000). The scale is divided into 10-point ranges reflecting different levels of functioning; 1-10 is the lowest, and 91-100 is the highest. Id. A GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)." Id. at 34. A GAF score of 51-60

mild to moderate limitations on average. (See, e.g., R. at 310 (GAF of 65–70 upon discharge); R. at 343 (finding no depression, anxiety, mania, suicidal ideation, paranoia, hallucinations); R. at 620–22 (reporting improved symptoms following a GAF of 45–50). This medical evidence contradicts Dr. Trost's opinion regarding Plaintiff's expansive limitations. (See R. at 594–601.) Plaintiff's medical records conflict with Dr. Trost's opinions, and thus it was the ALJ's role to weigh the evidence to determine which evidence was more persuasive. Unfortunately for Plaintiff, the ALJ sided—fairly and consistently with the law—against Dr. Trost.

I agree with Plaintiff that his is a unique case in that he suffers from bipolar disorder, a disease which is characterized by swings from mania (extreme highs) to depression (extreme lows). As I stated before, however, it is not my job to reweigh the evidence; my role is to confirm that the ALJ has applied the proper legal standard, and that there is an adequate factual basis to support his decision. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). And it most certainly is not my place to substitute my judgment for the ALJ's. Id. Thus, I am bound to affirm the Commissioner's decision.

### B. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff next objects to the ALJ's determination that his testimony regarding his limitations was less than credible. (See R. at 25–26; Pl.'s Obj. pg. 6–10.) Although the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he concluded that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are

---

indicates "moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) *or* moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. A GAF score of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) *or* some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

- 7 -

inconsistent" with the ALJ's RFC assessment. (R. at 25.) On this point, I believe the ALJ is on much firmer ground.

ALJs are instructed to follow a two-step process when determining the credibility of an applicant's statements regarding his symptoms. First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. If the claimant's statements regarding intensity, persistence, or limiting effects are not substantiated by the objective medical evidence:

> [T]he [ALJ] must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

Id. "If the ALJ discredits the claimant's testimony, he must give 'specific reasons' that are 'grounded in the evidence.'" Fisher v. Barnhart, 181 F. App'x 359, 363 (4th Cir. 2006) (unpublished) (citing SSR 96-7p; Craig, 76 F.3d at 591–96).

Here, the ALJ gave extensive reasons for his decision to discredit Plaintiff's testimony regarding the severity of his pain and its limiting effects. (See R. 25–26.) Plaintiff testified that he suffered from daily pain in his neck and lower back, yet "MRIs of the cervical and lumbar

- 8 -

Case 4:13-cv-00018-JLK-JCH   Document 21   Filed 09/12/14   Page 8 of 10   Pageid#: 788

spine [were] basically clean" with only mild degenerative changes. (R. 45–47, 455, 576.) He also testified that he suffers from "excruciating pain" in his upper back area:

> A. . . . It's real sensitive to touch. Like if somebody tries to hug me or lay a hand on my shoulder, it's just excruciating pain. Like even if do when I take a shower, when the water hits my upper back, it's just excruciating pain. It just stings. It's like pins and needles. It's hard to describe. It's very excruciating and irritating.
> Q. How long has that been going on?
> A. Years. Two to three years.
> . . .
> Q. How are you treating your pain?
> A. Medication.
> Q. Does the medication completely relieve your pain when you use it as directed?
> A. I don't see where it helps much at all.

(R. 47, 49.) In contrast to this testimony, he reported to his physician that the pain in his neck was only a 3 on the pain scale, and that his prescribed analgesic provided "moderate relief." (R. 585.) The ALJ also found that Plaintiff's statements about his ability to work and his past drug use were inconsistent with his prior statements and activities. (See, e.g., R. 26.)

The ALJ provided a comprehensive list of the reasons—and supporting references to the Record—for why he discredited the Plaintiff's testimony. It is clear that, in his decision, the ALJ gave "specific reasons" for discrediting Plaintiff's testimony that were "grounded in the evidence." Fisher, 181 F. App'x at 363. On this Record, I cannot say that the ALJ committed any legal error in finding Plaintiff's testimony less than credible. Therefore, Plaintiff's Objection to the ALJ's decision regarding his credibility will be overruled.

## IV. CONCLUSION

For the foregoing reasons, I find that substantial evidence supports the final decision of the Commissioner. I have reviewed the remainder of the Record for clear error and, finding none, I will overrule Plaintiff's Objection, adopt Judge Hoppe's R & R, grant the

- 9 -

Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment/Motion to Remand, affirm the final decision of the Commissioner, and dismiss this case from the active docket of the Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record as well as to Magistrate Judge Hoppe.

ENTERED this 12th day of September, 2014.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE